```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                          EASTERN DIVISION


BARTON ENTERPRISES, INC., et al.,  )
                                   )
            Plaintiffs,            )
                                   )
      v.                           )     No. 4:10 CV 324 DDN
                                   )
 CARDINAL HEALTH, INC.,            )
                                   )
            Defendant.             )
```

**MEMORANDUM AND ORDER STAYING ACTION FOR ARBITRATION**

This action is before the court on the motion of defendant Cardinal Health, Inc. to dismiss, or, in the alternative, to stay the case pending arbitration. (Doc. 25.) The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 29.) The court held a hearing on May 21, 2010. As requested by the court, defendant filed a post-hearing memorandum (Doc. 36), which the court has reviewed.

## I. BACKGROUND

On September 24, 2009, plaintiffs Barton Enterprises, Inc. and Barton Pharmacies, Inc. commenced this action against Cardinal Health, Inc., in the Southern District of Illinois. (Doc. 2.) On February 19, 2010, the case was transferred to this district. (Doc. 17.)

From the complaint, the plaintiffs allege the following facts:

Barton Enterprises operated a retail pharmacy in Alton, Illinois, and Barton Pharmacies operated a retail pharmacy in Hardin, Illinois. (Doc. 2 at ¶¶ 4-5.) The Alton pharmacy operated as a Medicine Shoppe Pharmacy, based on a licensing agreement between Barton Enterprises and Medicine Shoppe International, Inc. (MSI). (Id. at ¶ 6.)

On June 18, 2009, MSI terminated the license agreement, effective immediately. (Id. at ¶ 7; Doc. 2, Ex. A.) In its termination letter, MSI explained that the Alton pharmacy was in default of the licensing agreement in a number of respects. (Doc. 2, Ex. A.) In particular, MSI noted that the Alton pharmacy owed MSI $98,061.50 in past due amounts, and that it might owe additional amounts as well. (Id.) On July 29, 2009, MSI filed an arbitration claim against Joseph Barton, Penny

Barton, and Barton Enterprises, for breach of the license agreement. (Doc. 2, Ex. B.) MSI sought to recover not less than $98,061.50, plus interest, costs, and attorneys' fees. (Id. at ¶ 54.)

In early August 2009, Barton Enterprises and Barton Pharmacies reached agreements to sell the Alton and Hardin pharmacies to Walgreens, Inc. (Doc. 2 at ¶ 8.) Cardinal Health, the parent of MSI, contacted Walgreens, and alleged that Barton Enterprises owed MSI $654,206.99 for future license fees on the Alton pharmacy – even though there was no mention of these fees in either the termination letter or the arbitration claim. (Id. at ¶¶ 9-12.) In fact, the license agreement stated that MSI could not seek future license fees once the agreement had been terminated. (Id. at ¶ 13.) In response to Cardinal Health's conduct, Walgreens refused to honor its agreement to purchase the Alton and Hardin pharmacies. (Id. at ¶ 14.)

From these allegations, Barton Enterprises and Barton Pharmacies assert two claims. In Count I, the plaintiffs assert a claim of tortious interference with a contract. (Id. at ¶¶ 17-22.) In Count II, the plaintiffs assert a claim of tortious interference with a business expectancy. (Id. at ¶¶ 23-28.) In each count, the plaintiffs allege that Cardinal Health intentionally interfered with its contract with Walgreens by wrongfully asserting that MSI had a claim for future damages under the license agreement. (Id. at ¶¶ 20-21, 26-27.) The plaintiffs seek more than $75,000 in damages on each count.

## II. MOTION TO DISMISS

Cardinal Health moves to dismiss under Rule 12(b)(1), or to stay the case, pending arbitration, under the Federal Arbitration Act. Cardinal Health argues that the terms of the license agreement between MSI and Barton Enterprises require the plaintiffs to submit this lawsuit to arbitration. Cardinal Health, as the parent of MSI, is specifically mentioned in the license agreement. Cardinal Health notes that Barton Enterprises has filed a counterclaim in the arbitration proceeding, which seeks relief similar to the relief requested in this lawsuit. It also argues that Barton Pharmacies' claims depend on the licensing agreement. Finally, Cardinal Health argues, in the alternative, that

this lawsuit should be stayed pending the current arbitration. (Docs. 26, 33.)

In response, Barton Enterprises and Barton Pharmacies argue that there is no arbitration contract between them and Cardinal Health. Cardinal Health was not a signatory to the license agreement, nor was Barton Pharmacies. The plaintiffs note that they have not alleged that Cardinal Health and MSI acted in concert or collusively. Finally, the plaintiffs argue that their claims against Cardinal Health do not rely on the license agreement. (Doc. 32.)

### III. DISCUSSION

A dispute must be submitted to arbitration if there is a valid agreement to arbitrate, and the dispute falls within the scope of that agreement. Lyster v. Ryan's Family Steak Houses, Inc., 239 F.3d 943, 945 (8th Cir. 2001). Under the Federal Arbitration Act (FAA), there is a strong presumption in favor of arbitration. Id. That said, arbitration remains a matter of contract, and a party cannot be required to arbitrate a dispute unless the party has agreed to do so. AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 242 F.3d 777, 780 (8th Cir. 2001); Dunn Indus. Group, Inc. v. City of Sugar Creek, 112 S.W.3d 421, 435 (Mo. 2003)(per curiam). Ordinary principles of state contract law determine whether there is an enforceable arbitration agreement between the parties, and whether a particular party has agreed to arbitrate a particular matter. Donaldson Co. v. Burroughs Diesel, Inc., 581 F.3d 726, 731-32 (8th Cir. 2009), cert. dismissed, 2010 WL 265884 (U.S. Mar. 31, 2010) (No. 09-873); AgGrow Oils, 242 F.3d at 780.

**VALID ARBITRATION CLAUSE**

The license agreement between MSI and Barton Enterprises included an arbitration provision. This provision stated, in relevant part,

> **14. MISCELLANEOUS**
> **G. ARBITRATION.** Except as otherwise provided . . . all controversies, disputes or claims arising between us and/or our officers, directors, parents, affiliates, agents, employees or

> attorneys (in their representative capacity) and you and/or your shareholders, partners, officers, directors or employees shall be submitted for arbitration to the St. Louis, Missouri office of the American Arbitration Association on demand of either of us. . . . The award and decision of the arbitrator shall be conclusive and binding upon each of us and judgment upon the award may be entered in any court of competent jurisdiction. . . . This agreement to arbitrate shall continue in full force and effect subsequent to and notwithstanding the expiration or termination of this Agreement. We both hereby agree that arbitration shall be conducted on an individual, not a class-wide, basis.

(Doc. 33, Ex. 2 at 24-25.) Immediately before the signature blocks, the agreement reiterated that "THIS AGREEMENT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES." (Id. at 26.) The license agreement was signed on March 22, 2001, by Thomas M. Slagle, on behalf of the Medicine Shoppe International, Inc., and Joseph D. Barton and Penny R. Barton, on behalf of the Licensee. (Id.)

None of the parties to this lawsuit disputes the validity of the arbitration clause. Instead, the plaintiffs dispute the applicability of this arbitration provision.

**ENFORCING THE ARBITRATION CLAUSE**

State contract law determines whether a non-signatory can enforce the provisions of an arbitration clause. Donaldson, 581 F.3d at 732. "A litigant who was not a party to the relevant arbitration agreement may invoke § 3 [of the FAA] if the relevant state contract law allows him to enforce the agreement. Id. In this case, the law of Missouri controls. (See Doc. 33 at 4.) Even so, the court may primarily look to federal law when the available state law is sparse. See PRM Energy Sys., Inc. v. Primenergy, L.L.C., 592 F.3d 830, 834 (8th Cir. 2010).

In this case, Cardinal Health (a non-signatory) seeks to enforce the arbitration provision against Barton Enterprises (a signatory) and against Barton Pharmacies (a non-signatory).

**ENFORCING THE ARBITRATION CLAUSE AGAINST BARTON ENTERPRISES**

A non-signatory can enforce an arbitration clause against a signatory in a few circumstances. Id.; CD Partners, LLC v. Grizzle, 424 F.3d 795, 798 (8th Cir. 2005). The first circumstance relies on agency

principles, and allows a non-signatory to compel arbitration when the relationship between the non-signatory and signatory is so close, that failing to do so would eviscerate the arbitration agreement. PRM Energy, 592 F.3d at 834; CD Partners, 424 F.3d at 798. The second notable circumstance relies on equitable estoppel principles, and is known as "alternative estoppel." PRM Energy, 592 F.3d at 834. Under alternative estoppel, a non-signatory can enforce an arbitration clause against a signatory when the signatory's claims are so closely intertwined with the agreement containing the arbitration clause "that it would be unfair to allow the signatory to rely on the agreement in formulating its claims," yet disavow the part of the agreement containing the arbitration clause. Id.

Cardinal Health can enforce the arbitration clause against Barton Enterprises under either of these two theories. According to the complaint, Barton Enterprises and MSI entered into a license agreement. (Doc. 2 at ¶ 6.) Under the terms of this license agreement, the parties agreed to arbitrate all controversies or disputes between them. (Doc. 33, Ex. 2 at 24.) The plain language of the arbitration clause also stated that the Barton Enterprises would arbitrate all controversies or disputes between it and MSI's "officers, directors, [or] parents." (Id.)

Cardinal Health is the parent corporation of MSI. (Doc. 2, Ex. A at 1.) The MSI letterhead notes that it is "a Cardinal Health company." (Id.) This parent-subsidiary relationship is the type of "close relationship" contemplated by CD Partners. See SRS Energy, Inc. v. Bio-Prods. Int'l, Inc., No. 4:08 CV 285 HEA, 2008 WL 2224803, at *5 (E.D. Mo. May 27, 2008) (finding the corporate parent could enforce an arbitration agreement signed by its subsidiary). Given the close relationship between Cardinal Health (a non-signatory) and MSI (a signatory), Cardinal Health may enforce the arbitration agreement against Barton Enterprises (a signatory). See CD Partners, 424 F.3d at 798. Rejecting Cardinal Health's right to enforce arbitration would eviscerate the agreement in place, particularly given the plain language of the arbitration provision that speaks to disputes with MSI's parents.

Cardinal Health can also enforce the arbitration clause under the alternative estoppel theory. In its complaint, Barton Enterprises alleges that Cardinal Health contacted Walgreens, and told the company that Barton Enterprises owed MSI over $650,000 in future fees under the license agreement at issue. (Doc. 2 at ¶ 9.) Barton Enterprises further alleges that MSI could not recover future fees under the license agreement. (Id. at ¶ 13.) On the strength of these allegations, Barton Enterprises alleges that Cardinal Health tortiously interfered with a contract, and tortiously interfered with a business expectancy.[1] (Id. at 3-4.)

To prove each of these claims, Barton Enterprises must show that Cardinal Health's actions were unjustified. CedarBridge, LLC v. Eason, 293 S.W.3d 462, 469 (Mo. Ct. App. 2009); Clinch v. Heartland Health, 187 S.W.3d 10, 14 (Mo. Ct. App. 2006). To demonstrate that Cardinal Health's actions were unjustified, Barton Enterprises must look to the license agreement, particularly its treatment of future license fees. Because its claims against Cardinal Health depend on the interpretation of fee terms found in the license agreement, it would be unfair to allow Barton Enterprises to rely on these terms for its complaint, yet disavow the arbitration terms found in the very same license agreement. Cardinal Health can enforce the arbitration terms against Barton Enterprises under the alternative estoppel theory or the agency theory.

**CLAIMS SUBJECT TO ARBITRATION**

---

[1] Barton Enterprises asserts similar claims of tortious interference against MSI in its counterclaim in the arbitration proceeding. (Doc. 33, Ex. 1 at 2-6.) These overlapping claims provide further support for Cardinal Health's efforts to arbitrate. Burlington Ins. Co. v. Trygg-Hansa Ins. Co. AB, 9 F. App'x 196, 203-04 (4th Cir. 2001) (per curiam) ("[W]hen the charges against a parent company and its subsidiary are based on the same facts and are inherently inseparable, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement."); see also CD Partners, 424 F.3d at 799 ("The courts clearly recognize a nonsignatory's ability to force a signatory into arbitration under the 'alternative' estoppel theory when the relationship of the persons, wrongs and issues involved is a close one.").

To submit a matter to arbitration, there must be a valid agreement to arbitrate, and the underlying dispute must fall within the scope of that agreement. Senda v. Xspedius Commc'ns, LLC, No. 4:06 CV 1626 DJS, 2007 WL 781786, at *1 (E.D. Mo. Mar. 13, 2007). Because there is a strong national policy in favor of arbitration, courts should construe arbitration clauses to favor the arbitration of a particular dispute. CD Partners, 424 F.3d at 800. "Arbitration may be compelled under a broad arbitration clause as long as the underlying factual allegations simply touch matters covered by the arbitration provision." PRM Energy, 592 F.3d at 837. It generally does not matter whether the claims sound in tort or contract. Id.

In this case, the arbitration clause provided that, absent certain exceptions, "all controversies, disputes or claims arising between us and/or our officers, directors, parents, affiliates, agents, employees or attorneys . . . and you and/or your shareholders, partners, officers, directors or employees shall be submitted for arbitration. . . ." (Doc. 33, Ex. 2 at 24) (emphasis added). The language of the clause demonstrates that the parties intended for arbitration to be the primary method for resolving disputes between them. See Titan Pharms. and Nutrition, Inc. v. Medicine Shoppe Int'l, Inc., No. 05 Civ. 10580 (SAS), 2006 WL 626051, at *6 (S.D.N.Y. Mar. 13, 2006) (interpreting a similar arbitration clause). When the parties have agreed to a broad arbitration clause, "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." Estate of Athon v. Conseco Fin. Servicing Corp., 88 S.W.3d 26, 30 (Mo. Ct. App. 2002).

A party cannot avoid a broad arbitration clause simply by casting its complaint in tort. Id. If the tort claim arises directly out of a dispute involving the terms of the parties' contract, then the claim must be submitted to arbitration. Id. A tort claim may also be subject to arbitration under a broad arbitration clause if the claim raises some issue, "the resolution of which requires reference to or construction of some portion of the parties' contract." Id. On the other hand, if a tort claim does not require any reference to the underlying contract or its terms, the tort claim does not need to be arbitrated. Id.

Barton Enterprises alleges that Cardinal Health contacted Walgreens, and told the company that Barton Enterprises owed MSI over $650,000 in future fees under the license agreement at issue. (Doc. 2 at ¶ 9.) Barton Enterprises further alleges that MSI could not recover future fees under the license agreement. (Id. at ¶ 13.) On the strength of these allegations, Barton Enterprises claims that Cardinal Health tortiously interfered with a contract, and tortiously interfered with a business expectancy. (Id. at 3-4.) As noted above, Barton Enterprises must show that Cardinal Health's actions were unjustified to prove each of these claims. CedarBridge, 293 S.W.3d at 469; Clinch, 187 S.W.3d at 14. To make this showing, Barton Enterprises must look to the license agreement, particularly its treatment of future license fees. Accordingly, the claims for tortious interference necessarily require reference to, or construction of, the parties' license agreement. Barton Enterprises' claims fall within the scope of the arbitration provision, and must be submitted to arbitration. See Estate of Athon, 88 S.W.3d at 30.

**ENFORCING THE ARBITRATION CLAUSE AGAINST BARTON PHARMACIES**

Cardinal Health cannot enforce the arbitration agreement against Barton Pharmacies. A non-signatory can enforce an arbitration clause against a signatory in several circumstances. CD Partners, 424 F.3d at 799. The corollary is also true; there are certain circumstances where a signatory can enforce an arbitration clause against an unwilling non-signatory. Id. (citing Thomson-CSF, S.A. v. Am. Arbitration Ass'n, 64 F.3d 773, 776 (2d Cir. 1995)). There are five theories for binding non-signatories to arbitration agreements: (1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing or alter-ego; and (5) estoppel. Thomson-CSF, 64 F.3d at 776, cited with approval in Nitro Distrib., Inc. v. Dunn, 194 S.W.3d 339, 348 (Mo. 2006).

If an arbitration clause is incorporated into another agreement or contract, non-signatories will be bound by the terms of the incorporated arbitration clause. Thomson-CSF, 64 F.3d at 777. Under Missouri law, terms incorporated into a contract by reference are as much a part of the contract as if they had been specifically set out in the contract.

Dunn Indus., 112 S.W.3d at 435 n.5.  In this case, there is no evidence that the arbitration agreement between Barton Enterprises and MSI was incorporated into any agreement signed by Barton Pharmacies.

In the absence of a signature, a party may also be bound by an arbitration clause if its conduct indicates that it has assumed an obligation to arbitrate.  Thomson-CSF, 64 F.3d at 777.  In this case, there is no evidence that Barton Pharmacies assumed the obligation to arbitrate.

Traditional principles of agency may act to bind a non-signatory to an arbitration agreement.  Id.  In this case, there is no claim of a principal-agent relationship between Barton Pharmacies and Barton Enterprises.

When the corporate relationship between a parent and its subsidiary is sufficiently close, so as to justify piercing the corporate veil, one corporation may be legally accountable for the actions of the other. Id.  In this case, there is no allegation of a corporate relationship between Barton Pharmacies and Barton Enterprises.

Finally, a non-signatory may be bound to an arbitration agreement under an estoppel theory.  Id. at 778.  "A nonsignatory is estopped from denying its obligation to arbitrate when it receives a 'direct benefit' from a contract containing an arbitration clause."  M.A. Mortenson Co. v. Gem Mech. Servs., Inc., Civ. No. 06-2182 (JNE/SRN), 2006 WL 1997367, at *3 (D. Minn. July 14, 2006).  Direct benefit estoppel involves a non-signatory who embraces the contract despite their non-signatory status, yet attempts to repudiate the accompanying arbitration clause.  Hellenic Inv. Fund, Inc. v. Det Norske Veritas, 464 F.3d 514, 517-18 (5th Cir. 2006).  Receiving an indirect benefit is not a basis for enforcing an arbitration clause against a non-signatory.  Thomson-CSF, 64 F.3d at 779.

In this case, there is no evidence Barton Pharmacies received any direct benefit from the license agreement.  Unlike Barton Enterprises, Barton Pharmacies did not operate its retail pharmacy as a Medicine Shoppe Pharmacy.  Unlike Barton Enterprises, Barton Pharmacies did not receive any help from MSI in choosing a location for its pharmacy, furnishing its pharmacy, or training the staff at its pharmacy.  (See

Doc. 33, Ex. 2 at 2-5.) Simply put, Barton Pharmacies did not receive any direct benefit from the license agreement between MSI and Barton Enterprises. Looking to Thomson-CSF, there is no basis for enforcing the arbitration provision against non-signatory Barton Pharmacies.

More to the point, Thomson-CSF spoke to situations where a signatory was hoping to enforce an arbitration agreement against a non-signatory. Id. at 775. The case did not concern a non-signatory trying to enforce an arbitration agreement against another non-signatory. See id. Indeed, there is little authority for enforcing an arbitration provision between non-signatories. Am. Personality Photos, LLC v. Mason, 589 F. Supp. 2d 1325, 1331 (S.D. Fla. 2008) ("This Court has found no cases where one non-signatory has compelled another non-signatory to arbitrate a dispute, nor has [defendant] provided any."); Amstar Mortgage Corp. v. Indian Gold, LLC, 517 F. Supp. 2d 889, 900 (S.D. Miss. 2007) ("[E]quitable estoppel has never been applied to compel a non-signatory to arbitrate with another non-signatory under these circumstances. . . ."); but see Dale Fisher, D.C. v. TIG Ins. Co., No. 05-L-106, at *6-*7 (Ill. App. Ct. Sept. 11, 2007) (Rule 23 Order) (allowing a non-signatory to enforce an arbitration clause against another non-signatory).[2] Amstar Mortgage and American Personality Photos provide further support for not allowing Cardinal Health (a non-signatory) to enforce the arbitration clause against Barton Pharmacies (another non-signatory).

**THIRD-PARTY BENEFICIARY**

During the hearing, Cardinal Health argued that Barton Pharmacies was bound by the arbitration clause as a third-party beneficiary.

A non-signatory may be bound to an agreement if it is a third-party beneficiary of the contract. Greenpoint Credit, L.L.C. v. Reynolds, 151 S.W.3d 868, 873 (Mo. Ct. App. 2004). To qualify as a third-party

---

[2]The Fischer court found that the non-signatory was bound by the arbitration clause under the agency theory described in Thomson-CSF. No. 05-L-106, at *6-*7. Since the Fischer court looked to the five theories found in Thomson-CSF, and because Barton Pharmacies does not fall within any of those theories, the Fischer decision is consistent with the court's analysis.

- 10 -

beneficiary, the terms of the contract must clearly express the intent to benefit that party. Nitro Distrib., 194 S.W.3d at 345. The question of intent is paramount, and must be gleaned from the four corners of the contract. Greenpoint Credit, 151 S.W.3d at 873. If the contract does not contain an express declaration of intent, "there is a strong presumption that the third party is not a beneficiary and that the parties contracted to benefit only themselves." Nitro Distrib., 194 S.W.3d at 345. An incidental benefit to the third-party is insufficient to bind that party. Id.

The terms of the license agreement do not express any intent to benefit Barton Pharmacies. (Doc. 33, Ex. 2.) In fact, the agreement does not contain a single reference to Barton Pharmacies. (See id.) Finally, as noted above, there is no evidence Barton Pharmacies received any direct benefit from the license agreement between MSI and Barton Enterprises. Cardinal Health cannot enforce the arbitration provision against Barton Pharmacies under the theory of third-party beneficiary.

**REMAINING CLAIMS**

As noted above, Cardinal Health cannot enforce the arbitration clause against Barton Pharmacies. The claims of Barton Pharmacies – even though they are identical to those of Barton Enterprises – cannot be submitted to arbitration. See Greenwood v. Sherfield, 895 S.W.2d 169, 174 (Mo. Ct. App. 1995) ("[A]rbitration is strictly a matter of contract; therefore, a party can be compelled to arbitration only when it has agreed to do so.").

At the same time, it makes little sense for this court to duplicate the efforts of the arbitrator by deciding the exact same claims. More to the point, similar claims of tortious interference, between Barton Enterprises and MSI, are already before the arbitrator. In order to conserve judicial resources and avoid the potential for inconsistent results, the court will stay the action between Barton Pharmacies and Cardinal Health. See Contracting Nw., Inc. v. City of Fredericksburg, Iowa, 713 F.2d 382, 387 (8th Cir. 1983); Perry v. Ice House Am. LLC, No. 4:08 CV 501 JLH, 2008 WL 4216550, at *6 (E.D. Ark. Sept. 12, 2008)

## IV. CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that the motion of defendant Cardinal Health, Inc. to dismiss, or, in the alternative, to stay the action (Doc. 25) is sustained as follows:

a. Further proceedings in this action are stayed pending the outcome of arbitration proceedings involving the claims between Barton Enterprises, Inc. and Cardinal Health, Inc.
b. The claims between Barton Pharmacies, Inc. and Cardinal Health, Inc. in this judicial action are not subject to arbitration and are stayed until the resolution of the aforesaid arbitration.

In all other respects, the subject motion (Doc. 25) is denied.

**IT IS FURTHER ORDERED** that, on or about the first day of each month beginning with August 1, 2010, the parties shall file a joint report of the status of the arbitration proceedings, and as soon as practical after the disposition of the arbitration proceedings they shall file with the court a report of same.

/S/   David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on May 27, 2010.